WRIGHT et al. v. FITZ BROS. CO.

(Circuit Court of Appeals, First Circuit. November 18, 1904.)

No. 517.

1. PATENTS—INFRINGEMENT—LASTS.

A shoe last made in accordance with the Fitz patent, No. 632,994, *held* not an infringement of the Clark patent, No. 388,830, so as to be within a license granted under the Clark patent, nor its manufacture by the licensee a violation of the license contract on the ground that it embodies patentable parts of the Clark invention.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Edward S. Beach (George H. Maxwell, on the brief), for appellants.

Elgin C. Verrill (Clifford, Verrill & Clifford, on the brief), for appellee.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

ALDRICH, District Judge. The defendant, as successor of the Amos G. Fitz and Ira W. Fitz copartnership, holds a license from the Clark Relasting & Shoe-Treeing Company, which gives it the right to make lasts in accordance with what is known as the "Clark invention," described in letters patent No. 388,830, under which it is bound to pay a royalty on all lasts made in accordance with the patent and the license thereunder; and the complainants have succeeded to the rights of the licensor in respect to protection and an accounting. It was stipulated below, in effect, that the accounts stated in the defendant's answer include all lasts made by the defendant covered by the Clark patent and the license referred to, unless lasts like the Amos G. Fitz last, so called, are within the license, and should rightfully be included in the account. We therefore have only to deal, first, with the question whether the Fitz last infringes the Clark patent, and, secondly, whether it violates the contract or the rights of the complainants under the license.

It is apparent that the two lasts have the same general purpose—that of stretching and shaping the shoe under pressure—but our conclusion is that the means of accomplishing that purpose are substantially different in the two devices. It is not necessary for us to consider which is the better means, or which is the most successful device. Clark's leading idea was to have a last in two parts, so arranged that the shoe in the process of shaping should be suitably stretched or spread, and this result was to be accomplished, and he intended that this result should be accomplished, through a last divided into two pieces by a vertical cut across the shank, so that he should have a heel portion and a fore part without any physical connection, each to have a hole to receive a pin or tool "adapted to spread or separate the said parts one from the

other by any suitable spreading device." It is clear that the idea of complete separation of the parts was in the mind of the patentee, for he points out in his specification that the heel portion may be removed at any time desired, and the fore part remain in the boot or shoe, thereby rendering the heel portion superfluous at certain stages of the manufacture, and that the fore part may be inserted independently of the other part of the last.

In practical operation, after the Clark last, consisting of two parts, is placed in the shoe, each part thereof having a hole designed to receive a pin or tool attached to a suitable spreading device, it is placed upon the machine, the hole in each part thereof receiving the intended pin connected with a suitable spreading device, and by hand or by mechanical means the two pieces are separated and forced apart, thus stretching and shaping the shoe, and accomplishing a result answering the general purpose of the invention.

The Fitz last in question, which is constructed in substantial compliance with the Fitz patent, of course has the same general purpose—that of stretching the leather and shaping the shoe—but the means of doing it, as already observed, are substantially different. It wholly discards the idea of separate pieces or spreading devices independent of the last itself. The Fitz last is constructed with physical connections pivotally secured, and when the two pieces are forced into the shoe under pressure they assume what is termed their "lengthened relation," thus stretching and shaping the shoe, and the union between the heel part and the fore part becomes fixed and rigid, and the two parts are automatically locked upon its pivoted connecting bar or bars. The conceptions and the means are so different in the two devices that the doctrine of equivalents in no way applies. The difference is very clearly stated by the appellee in its brief in the following words:

"The Clark last was professedly designed to be separable in the shoe to fill, fit, and stretch the shoe while being treed. This was all that he added to the prior art. The 'Amos G. Fitz Last' was professedly designed to be rigidly locked in the shoe, and to be inseparable while the shoe was being treed thereon, being, when in the shoe, practically a solid last."

The conclusion is that the Amos G. Fitz last does not infringe the Clark patent.

Now, as to the rights of the parties under the license. The complainants contend that, even if the Clark patent be not infringed, yet the license is violated, since the license refers to parts of the invention. This contention may, we think, be disposed of aside from the many expressions in the license which would require it to be confined to the Clark invention, and preclude the argument that it was intended to cover parts of the Clark last which did not in themselves embody the invention. The substantial feature of the Clark novelty is in the idea which has been explained; and, while the parts of the last are separable, the invention is unitary, and incapable of being divided into patentable parts; and therefore the use of the heel part or of the fore part cannot be said to be a use of a part of the Clark invention within the reasonable meaning of the license.

As has been said, the Clark last is of two separable parts, each having a vertical hole for the reception of a tool, and when the last as a whole is inserted in the shoe the holes receive two separate pins, which, first, hold and support the last at two points, and, second, through the instrumentality of a suitable spreading device serve to separate the two parts, elongate the last, and stretch the shoe. This use of the two vertical holes for spreading purposes, whereby, through the separation of the two parts, the last is lengthened and the shoe stretched lengthwise, is the substance of the invention and the only patentable feature. As the appellee's brief says:

"At the date of the Clark invention it was not new broadly to provide a last with two vertical tool-receiving holes extending into it from the top to receive the pins of a treeing machine to hold the last upon the tree and to prevent it from twisting thereon. Such a last is shown in defendant's exhibit 'Packard and Arnold Patent.'"

The specification of the Packard and Arnold patent contains the following expression:

"While the extended upper surface of the metallic standard admits of its being provided with two or more holes or sockets for the reception of a corresponding number of supporting pins in the jack, thereby enabling it to be steadied and prevented from turning around independently of the jack, as is liable to occur where a single supporting pin only is employed."

In view of this earlier patent, the substantial novelty of the two vertical holes in the Clark last is not in the holding function, but in the function of spreading and lengthening. It results, therefore, that the Amos G. Fitz last does not violate the rights of the complainants under the license.

The decree of the Circuit Court is affirmed, with costs to the appellee.